ASUNCIÓN PERELES, Plaintiff and Appellant, *v.* JUAN MARTINÓ ET AL., Defendants and Appellees.

No. 10464.   Argued August 26, 1952.—Decided September 30, 1952.

*Benjamín Ortiz* and *Guillermo S. Pierluisi* for appellant.   *Félix Ochoteco, Jr.,* for appellees.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Asunción Pereles lived in concubinage with Lorenzo Martinó until his death on August 1946.   When he died, said Lorenzo Martinó left property assessed in the sum of $125,625.97.[1]

Martinó died intestate leaving as sole and universal heirs his brother and sister Juan and Felipa Martinó, who

---

[1] Said property was assessed at this sum by the Department of Finance for the purpose of levying an inheritance tax.

acquired, thereby, the property left by their aforesaid ancestor.

Two years after Lorenzo Martinó's death, his concubine Asunción Pereles filed a complaint in the former District Court of Puerto Rico, Bayamón Section, against his heirs for the division of property, which was later substituted by an amended complaint. It is prayed that the community of property existing between plaintiff and Lorenzo Martinó be divided between the plaintiff and defendants and that they be ordered to surrender and pay to plaintiff a share equal to one-half of the property left by the deceased or whatever share or interest the court considers belongs to her. Said complaint is predicated on the fact that plaintiff contributed with her property and her labor in the acquisition of the estate left by Lorenzo Martinó and, that there was an agreement between them to share the property accumulated by both, and that even in the absence of said agreement, she contributed with specific labor and capital which entitles her to a particular share in the property. Defendants answered accepting that they are the sole and universal heirs of Lorenzo Martinó and that as such they have the possession of the property left by their ancestor but they denied that plaintiff Asunción Pereles contributed with capital or labor to the acquisition of said property or that there existed any agreement whatsoever between her and Lorenzo to share said property.

The issue thus joined the corresponding trial was held. During the trial, plaintiff took the witness stand to testify in her own favor and the lower court, at the objection of defendants, refused to admit in evidence that part of her testimony concerning her transactions with the deceased Lorenzo Martinó in connection with the property of the latter, as well as the statements made by the intestate to plaintiff about said property. After having introduced the rest

of the evidence, the lower court rendered judgment dismissing the complaint with costs.

Plaintiff appealed from this judgment, assigning the following as the sole error committed by the lower court:

"That the lower court erred in not permitting plaintiff, Asunción Pereles, to testify concerning her transactions with the deceased, Lorenzo Martinó, unduly applying § 3 of the Act to define who are competent witnesses, approved on March 10, 1904." [2]

■■ Appellant urges that the decision of the lower court rejecting part of her testimony is incorrect since the facts in this case do not render applicable § 3 of the Act of March 10, 1904 (Sess. Laws, p. 130), or the doctrine established in *Wilcox* v. *Axtmayer et al.*, 23 P.R.R. 319; *Cestero* v. *Heirs of Cestero*, 35 P.R.R. 908; *De la Rosa* v. *Quevedo*, 47 P.R.R. 165 and *Sánchez* v. *Sánchez*, 58 P.R.R. 580, and she insists that since the lower court had correctly decreed that plaintiff was bringing said action in her own right and not as heir of defendants' ancestor,[3] it should have applied the doctrine set forth in *Boscio* v. *Vilá*, 67 P.R.R. 567. We do not agree. The facts in that case may be distinguished from those in the case at bar. For our present purposes, the fundamental difference between one and the other case consists in

---

[2] Section 3 of the Act to define who are competent witnesses, etc., reads:

"In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this Section shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

[3] The Findings of Fact of the lower court are brief and read as follows:

"From the evidence adduced the Court makes the following findings of fact:

"FINDINGS OF FACT

"1.—That plaintiff lived in concubinage with Lorenzo Martinó until

that in *Boscio* v. *Vilá, supra,* the action was not directed against defendant Isabel Vilá Martínez in her condition as heir of her father. She held a title of ownership on the real property object of the suit by virtue of a deed of sale executed in her favor by her father and her stepmother, plaintiff therein. When her father died, his widow claimed her half of the conjugal property and her usufructuary share on said property contesting the title that defendant held on the ground that it was simulated.

We held in said case at pages 571, 572:

"If we examine the complaint in the present case, we shall see, that although the plaintiff claimed her usufructuary share to which she is entitled as heir of her husband, she also claimed her one-half of the conjugal property and this later claim is in her own right and not as heir. It is unquestionable that if the plaintiff had merely claimed her portion to the conjugal property, without claiming her usufructuary share, there would be no controversy as to this point, because in that event § 3 would be inapposite. And plaintiff could have done this, because the rights to claim conjugal property and to receive her usufructuary share, are two independent and separable rights. Therefore, by amending the complaint so as to strike everything concerned with the usufructuary share, the case would be taken out of the prohibition of § 3, thus permitting us to do justice if the facts alleged in the complaint are true.

"    .    .    .    .    .    .    .    .

"We would agree with the defendant in her defense of nonjoinder of parties if plaintiff should not strike from her complaint the claim to the usufructuary share. But if after making

---

the death of the latter in August 1946.

"2.—That at the time of his death Lorenzo Martinó left property assessed in the sum of $125,625.97 according to an assessment made by the Treasurer for the purpose of levying an inheritance tax.

"There is no ground whatsoever in the evidence which may be believed by the Court, indicating the judge that plaintiff contributed with specific property, capital and labor, which entitled her to a share in the property left by Lorenzo Martinó at his death. Neither is there any evidence whatsoever which may be believed by the court that there was an agreement between plaintiff and Lorenzo Martinó to share property acquired by them while living in concubinage. *Torres* v. *Roldán,* 67 P.R.R. 342."

this amendment, no other claim is set up by the plaintiff as heir of her husband, his other daughters would not be necessary parties to the action."

Although this Court held in said case that § 3 was inapposite because plaintiff's claim of her portion of the community property was in her own right and not as heir of her husband, in making such a pronouncement the Court did not ignore the unquestionable fact that the action was not directed against the heirs of Vilá as such for otherwise we would have felt constrained to consider in said case the scope of the provisions of said § 3 as to its applicability to *actions against the heirs of a decedent* inasmuch as the prohibition established in said Act covers not only those actions filed by the heirs of a decedent arising out of transactions had with the latter but it equally covers the *actions against said heirs*.

It is unquestionable that the complaint herein is directed against the heirs of Lorenzo Martinó. In its prayer[4] it is requested that the division of the community of property existing between plaintiff and Lorenzo Martinó, the predecessor, be ordered, and that his heirs be ordered to surrender and pay to said plaintiff a share equal to one half of the property left by Lorenzo Martinó when he died or whatever share or interest the Court considers corresponds to her. It is also true that plaintiff claims in her own right and not as heir of Lorenzo Martinó, the decedent. It may be urged that in relation with the property claimed by plaintiff, defendants ought not to consider themselves as heirs but as joint owners and that in upholding the applicability of said § 3, plaintiff's contention on the character of the property claimed would be prejudged. However, defendants could

---

[4] The prayer does not form part of the complaint but may be used to determine the scope of the cause of action exercised thereof. *Antelo v. Yabucoa Sugar Co. et al.*, 33 P.R.R. 100 and *Isern v. Benítez*, 57 P.R.R. 331. Besides that, the averments of the complaint do not leave any doubt as to the fact that the action was brought against Juan and Felipa Martinó as sole and universal heirs of Lorenzo Martinó.

also invoke that same argument because if the lower court would have held that plaintiff's rejected testimony did not fall within § 3, on the ground that the property claimed by her did not belong to defendants as heirs of decedent, but that as regards that property said defendants were mere joint owners, then the court would have prejudged the principal question involved in the controversy, to wit: whether the property left by decedent Lorenzo Martinó belonged to him in whole or whether part of said property belonged to plaintiff.

The rule of evidence set forth in said § 3 has been regarded by Wigmore as deplorable in every respect, and this Court following his opinion, has refused to extend the rule by judicial construction or to exclude testimony which does not fall clearly within the terms of the statute. *Boscio* v. *Vilá, supra,* and cases cited therein. Said rule has been subject to equal criticism in other jurisdictions where statutes similar to ours have been adopted.

The Texas statute, for example, reads as ours.[5]

There, as here, the courts have refused to extend the rule by judicial construction or to exclude testimony which does not fall clearly within the terms of the statute. See *Simon* v. *Middleton,* 112 S. W. 441, and *Dodson* v. *Watson,* 225 S. W. 586. However, in *Hupp* v. *Hupp,* 235 S. W. 2d 753, decided in December 1950, the rule was applied to a situation similar to the one herein. In brief, the facts of said case are as follows:

---

[5] The statute of Texas reads as follows:

"In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent." (Vernon's Texas Civil Statutes, Art. 3716.)

"Ann Hupp brought suit against Fred Hupp, individually and as administrator of the estate of T. R. Hupp, deceased, and others for a judgment for one-half of the value of the property of the deceased, either on theory that plaintiff was entitled thereto as the putative wife of the deceased, or on theory that she and deceased accumulated the property in a partnership or joint venture. The District Court of Wichita County, Temple Shell, J., rendered a judgment for the plaintiff, and the defendants appealed. The Court of Civil Appeals, McDonald, C. J., held that admission of testimony of plaintiff as to transactions with deceased, was reversible error."

Discussing the grounds on which appellee therein argued that her testimony as to transactions with her putative husband were admissible, the Court of Appeals set forth at page 755:

"First, she contends that she was suing for her own individual interest and rights as a putative wife, or as a partner, to property the title to which was in her, and not in the decedent or his heirs. This argument overlooks the fact that defendants disputed the claim that the property in suit belonged to plaintiff, either as the surviving putative wife or as a partner. The case is brought within the statute by reason of the fact that the plaintiff sued the administrator and heirs of the deceased, as such, and that judgment would be rendered for or against them, as such. It is true that the judgment would not be rendered for or against the plaintiff as an heir or as a representative of the deceased, within the meaning of the statute, but judgment would be rendered for or against the defendants in the capacities set out in the statute. We recently had a similar problem before us in the case of *Higgs* v. *Farmer*, Tex. Civ. App., 234 S. W. 2d 1021."

Applying that same reasoning to this case we conclude that the lower court did not commit the error claimed by appellant.

■ We have carefully read the transcript of evidence and it appears therein that the findings of fact of the lower court are amply supported by evidence. The fact that plaintiff lived in concubinage with Lorenzo Martinó until his

800

death on August 1946, does not entitle her to have a share in the property left by him. The woman's share in the property acquired during her concubinage must always be based on the contract entered into between the concubines and, in the absence of any contract on her labor and effort towards its acquisition. *Pérez* v. *Cruz*, 70 P.R.R. 890 and *Torres* v. *Roldán*, 67 P.R.R. 342. The lower court concluded that it was not proved that said agreement between plaintiff and her paramour existed, nor that she had contributed with specific property, capital or labor in the acquisition of the estate left by Lorenzo Martinó.

The judgment appealed from will be affirmed.