### JONES et al. v. HUTCHINSON et al.
### No. 11952.

Court of Civil Appeals of Texas. Galveston.

Feb. 5, 1948.

Rehearing Denied Feb. 26, 1948.

Richard Spinn and Odis Tomachefsky, both of Brenham, for appellants.

A. W. Hodde and R. E. Pennington, both of Brenham, and E. T. Simmang, of Giddings, for appellees.

GRAVES, Justice.

This statement of the nature and result of the cause below, conceded by the appellees to be correct as such, and edited here in minor respects only, is, in material substance, thus quoted from the appellants' brief:

"This suit was brought by Hugh Hutchinson et al., to partition certain property, owned in fee by Bina Hutchinson, deceased. She died on the 11th day of August, 1946, intestate, and at the time of her death was a feme sole, and had no children. Hugh Hutchinson et al. alleged that they were brothers and sisters of Bina Hutchinson; that Bina Hutchinson had been born to Mollie Felder and Aaron Hutchinson, and that the said Aaron Hutchinson was the father of the Plaintiffs, by a later marriage of his to another woman; that at the time the said Bina Hutchinson was born, there existed a common-law marriage between the said Mollie Felder and Aaron Hutchinson, and that the Plaintiffs, appellees herein, were the sole heirs of the said Bina Hutchinson.

"Later, Albert Jones et al., appellants herein, intervened in such suit, and alleged that they were the sole owners of the estate of Bina Hutchinson, deceased, and that the said Bina Hutchinson had been born to Mollie Felder, and that she was an illegitimate child of the said Mollie Felder, and that Mollie Felder was not married to anyone at the time of the birth of said child, Bina Hutchinson, and that, in the event the said Aaron Hutchinson was the father, that never-the-less the said Bina Hutchinson was born as an illegitimate child to Mollie Felder. Interveners further alleged that, inasmuch as Bina Hutchinson was an illegitimate child of Mollie Felder, interveners were the sole heirs, through the maternal side.

"Plaintiffs were claiming heirship to Bina Hutchinson, through the paternal side; however, if Bina Hutchinson was an illegitimate child, interveners claimed Plaintiffs could not inherit under the Texas law of descent and distribution.

"The case resolved itself into one issue —of whether or not, at the time of the birth of Bina Hutchinson, there existed a common-law marriage between Mollie Felder, the mother, and Aaron Hutchinson. The case was submitted to the jury on this issue, and the jury answered the same in the affirmative."

The parties involved on both sides were all Negroes, and so was Bina Hutchinson, whose estate was thus the bone of contention between them, and so, likewise, were all of the witnesses, who testified below.

The estate of Bina Hutchinson so constituting the subject matter of the suit consisted of 3 small, separately-described, tracts of land, all lying in the Joe Davis League, in Washington County, in the Jackson Creek Area, aggregating 107¼

acres, together with 15 head of cattle, both sorts of such property being fully described in the trial pleadings.

Bina Hutchinson was thus the common source under whom both sides so claimed her estate; the appellants' claim of heirship to her being that they were her cousins, through her mother, Mollie Felder, of whom she was an illegitimate child; whereas the appellees, in turn, asserted themselves to have been, inter sese, her full-blood brothers and sister, and that Bina Hutchinson, as the legitimate child of Aaron Hutchinson and Mollie Felder, had consequently been their half-sister in blood.

The single issue of fact, to which the cause was so reduced for trial, had been expressly stipulated between all the parties to be such one point of difference between them, and, together with the jury's affirmative answer thereto, was this: "Do you find from a preponderance of the evidence that at the time of the birth of Bina Hutchinson the mother, Mollie Felder, and Aaron Hutchinson, had mutually agreed and consented, one with the other, to become husband and wife, and, pursuant to such agreement, were living together and cohabiting as husband and wife, claiming to be married, and holding themselves out to the public as husband and wife? Answer: 'Yes'."

The trial court accordingly rendered its judgment in favor of the appellees, who were the plaintiffs below, against the appellants, who were the interveners below, for the entire property of the estate, supporting its decree not only by the jury's verdict, but upon its own findings from the pleadings and evidence, in addition thereto, but not inconsistent therewith.

In this Court appellants, through their first 3 points of error, attack the sufficiency of the evidence to sustain the answer of the jury to the one special issue so submitted; especially urging this Court to exercise its exclusive province in that behalf, and to declare such verdict to have been so overwhelmingly against the weight of the evidence as to have been clearly wrong, and to reverse the judgment resting thereon in consequence.

After careful review of the record, including the statement of facts, this Court is unable to so hold; concluding, rather, that the evidence was amply sufficient to sustain the jury's finding, hence cannot be disturbed upon the appeal.

■ While it would be going beyond the requirements to undertake here a full restatement, or even a comprehensive résumé of the testimony, it may not be amiss, to indicate this Court's conclusion that the testimony of the two Negroes alone, who were shown to have been in the best position of all the witnesses to know the material facts underlying the inquiries so propounded by the court, was sufficient to support the verdict. In substance, quoting the statement thereof from the appellees' brief, it was this: "Tom Brown, a witness for the appellees, testified that he was born 10 years before freedom was declared; that would have made him 92 years of age at the time of the trial, (July 15 of 1947), and Joe Felder, the other witness for appellees, was over 80 years of age, and, of all the witnesses, they were the only 2 witnesses who were any size when Bina Hutchinson was born. They both testified that they really knew Aaron Hutchinson and Mollie Felder intimately; that Tom Brown was a little younger than Aaron Hutchinson had been, and they went together; that both of the witnesses associated and visited with each other, although Aaron Hutchinson and Mollie Felder were both some older than the witnesses. They both positively testified that Aaron and Mollie lived together in a house as husband and wife, worked together side by side in the field, cooked their meals together and ate together, went to church and social gatherings, and held themselves out as man and wife; that Aaron and Mollie so lived together for some 4 to 6 years, and during that time Bina Hutchinson was born to them. Bina Hutchinson had reached somewhere from 1½ to 2 years, when Mollie permanently abandoned Aaron, and moved over to the Turner Hall farm, and commenced to live with one Jake Warren. Before that, they lived on the Robertson farm. Tom Brown, Joe Felder, Charlie Johnson, and Albert Wilburn, all witnesses for the appellees, testi-

fied that Bina, during her entire lifetime, except for the short time she was married, always went by the name of Bina Hutchinson, and that she told people that Aaron Hutchinson was her father; and, when Aaron Hutchinson got sick, she paid his doctor bills, and when he died, she took charge of and made provisions for his funeral-expenses; and that also Bina and Aaron visited each other as a daughter and father would do. From the time of the birth of Bina to the time of the grave for Aaron Hutchinson, they both were generally recognized, held themselves out, and everyone knew that they were daughter and father."

On the other hand, as comparable to that indicated as establishing the appellees' claimed relationship and consequent heirship, the testimony of appellants' witnesses was that of people sustaining no such close relationship to the deceased Bina Hutchinson, nor in a position to know her status at the time involved.

Perhaps a single exception to such less favorable situation of the appellants' witnesses was Nannie Brooks. She was a party to this suit, as one of the interveners below, and is an appellant therein in this Court; indeed, the case for the appellants hinged largely, if not controllingly, upon Nannie Brooks' testimony. To say nothing of its contradictory character to that just quoted from the appellees' witnesses, especially that from Tom Brown and Joe Felder, and giving all due weight to it, it is still true that the jury were entitled to so choose between the versions of these opposing witnesses.

■ That is, in fact and law, they were entitled to accept that of Tom Brown and Joe Felder, and to discard that of Nannie Brooks. The rule of law on that subject, where the witness is a party to the suit, was thus stated in Moore v. Conway, Tex.Civ.App., 108 S.W.2d 954, at page 958: "Appellant is a vitally interested party. His credibility and the weight to be given

to his testimony were for the jury to determine. They were not bound to accept as true what appellant said, and, if they disbelieved him or doubted the accuracy of his statements, then they had the right to disregard all, or any portion, of his testimony and look to the other facts and circumstances in the case in arriving at their decision, and their finding is conclusive, because, if his testimony is ignored, then there is no evidence * * *."

Under this state of the record, it must accordingly be held that the appellants wholly failed to prove their claim that they had been the blood-cousins of Bina Hutchinson, deceased; hence they so failed to show, either that they owned any interest in the estate she so left, or that they occupied any such relation of interest toward it as would have warranted the trial court in disregarding both the jury's verdict and its own findings on the facts, and giving them any recovery.

Without in any way changing the ground upon which this affirmance must be ordered, it might, therefore, be conceded that the appellants' theory of their rights as being the sole heirs of Bina Hutchinson through her maternal side as the illegitimate child of Mollie Felder was correct, and that the law of distribution and descent would have so cast the property here involved upon them; but, the facts having been bindingly on this Court found the other way, their theory becomes, in consequence, a mere abstraction.

■ There are procedural questions discussed in the briefs; but, upon consideration of them, this Court concludes that none of them were based upon such errors as were reasonably calculated to cause, and probably did cause, the rendition of an improper judgment below. Rule 434, Texas Rules of Civil Procedure.

These conclusions require an affirmance of the judgment. It will be so ordered.

Affirmed.